1

2

3

4                    UNITED STATES DISTRICT COURT

5                   NORTHERN DISTRICT OF CALIFORNIA

6                      SAN FRANCISCO DIVISION

7

8    O.B.,[1]                              Case No.  24-cv-02611-PHK

9              Plaintiff,                  **ORDER REMANDING CASE**

10        v.

11   SSA COMMISSIONER,

12             Defendant.

13

14        Plaintiff O.B. ("Plaintiff") brings this action under the Social Security Act, 42 U.S.C.

15   § 405(g) ("the Act"), seeking judicial review of a final decision by the Commissioner of the Social

16   Security Administration ("Commissioner"), denying Plaintiff's application for supplemental

17   security income.  [Dkt. 1].  The Parties have consented to proceed before a Magistrate Judge for

18   all purposes, including the entry of final judgment, under 28 U.S.C. § 636(c).  *See* Dkts. 4-5.

19   Plaintiff has filed an Opening Brief, the Commissioner has filed a Response Brief, and Plaintiff

20   has filed a Reply Brief.  [Dkt. 9; Dkt. 13; Dkt. 14].  The Commissioner has also filed the

21   Administrative Record.  [Dkt. 6 (hereinafter "AR")].

22        After carefully analyzing the briefs, the record, and the applicable law, the Court

23   **REVERSES** the Commissioner's decision and **REMANDS** the case for further proceedings

24   consistent with this Order.

25

26   _____

27   [1] In actions involving requested review of a decision by the Commissioner of the Social Security
     Administration, the Court generally uses the first name and last name initials of the plaintiff in the
     Court's public orders out of an abundance of caution and regard for the plaintiff's potential privacy
28   concerns.

United States District Court
Northern District of California

1

2    **BACKGROUND**

3    The following background focuses only on the factual matters and procedural history that
are relevant to the Court's analysis herein.

4    Plaintiff was born on January 23, 1990; he was twenty-seven years old on the alleged

5    disability onset date.  [AR 93, 403].  He speaks English and has completed two years of college.

6    [AR 451, 453].  His employment history includes positions as a cashier and an agricultural

7    laborer.  [AR 453].

8    On December 31, 2018, Plaintiff protectively filed an application for supplemental security

9    income, pursuant to Title XVI of the Act.  [AR 403-11].  In his application, Plaintiff alleged that

10   he had been unable to work, since January 1, 2018, due to right eye blindness, impaired vision in

11   his left eye, and post-traumatic stress disorder (PTSD).  [AR 452].  The Commissioner denied

12   Plaintiff's application, initially on April 12, 2019, and upon reconsideration on August 1, 2019.

13   [AR 146-62].

14   Plaintiff then successfully requested a hearing before an Administrative Law Judge

15   ("ALJ"), which took place on July 12, 2021.  [AR 74-90, 163-64].  On August 2, 2021, the ALJ

16   issued an unfavorable written decision, finding that was Plaintiff was not disabled and denying his

17   application for supplemental security income.  [AR 121-31].

18   Plaintiff thereafter filed a request for review of the ALJ's decision with the Appeals

19   Council, and on August 9, 2022, the Appeals Council vacated the ALJ's decision and remanded

20   the case for further proceedings.  [AR 136-41].  Specifically, the Appeals Council directed the

21   ALJ on remand to: (1) "[o]btain additional evidence concerning the claimant's impairments in

22   order to complete the administrative record in accordance with the regulatory standards regarding

23   consultative examinations and existing medical evidence[;]" (2) "[g]ive further consideration to

24   the claimant's maximum residual functional capacity during the entire period at issue and provide

25   rationale with specific references to evidence of record in support of assessed limitations . . . [and]

26   evaluate the prior administrative medical findings pursuant to the provisions of 20 CFR

27   416.920c[;]" (3) "offer the claimant an opportunity for a hearing[;]" and (4) "take any further

28   action needed to complete the administrative record and issue a new decision."  [AR 139].

United States District Court
Northern District of California

1    On remand, ALJ Corinne T. McLaughlin held a hearing on May 3, 2023.  [AR 43-90].

2    Plaintiff appeared and testified at the hearing, accompanied by his attorney.  The ALJ also heard

3    testimony from a Vocational Expert.  Medical opinions and evidence were provided by two state

4    agency medical consultants, M. Yee, M.D. and Betty Santiago, M.D., and two state agency

5    psychological consultants, Michael Dennis, Ph.D. and Pamela Hawkins, Ph.D.  [AR 97-99, 110-

6    13].

7    At the hearing, Plaintiff testified that he was currently incarcerated.  [AR 46, 51].  Plaintiff

8    testified that he entered prison on March 4, 2019.  [AR 54].  He testified that he expected to be

9    released in approximately twelve years.  [AR 46, 52-53].  Plaintiff testified that he will be unable

10   to work upon his release primarily due to vision impairment.  [AR 53].  Plaintiff testified that, due

11   to a physical assault that occurred in 2011, he is totally blind in his right eye.  [AR 53-54].

12   Plaintiff testified that he also suffers from vision impairment in his left eye for which he must

13   wear prescription glasses.  [AR 53].  Plaintiff testified that with prescription glasses he can see

14   "fairly well" out of his left eye.  *Id.*  Plaintiff testified that is able to watch television and read,

15   though subject to certain qualifications.  [AR 53, 56].  Specifically, Plaintiff testified that he is

16   able to read for fifteen to twenty minutes continuously and watch television for forty-five to sixty

17   minutes continuously before his eyes start hurting and he must rest.  [AR 53-54, 56].  Plaintiff

18   testified that he can only read "large print" text.  [AR 53].

19   Plaintiff told the ALJ that he also suffers from PTSD-related anxiety and depression,

20   which makes it difficult for him to "be around people," particularly adult men.  [AR 55-57, 60-

21   61].  Plaintiff testified that he is "always alert," "jumpy," and "in a state of hypervigilance." [AR

22   56-57].  However, Plaintiff told the ALJ that he was generally able to "manage."  [AR 55].

23   Plaintiff expressly denied any difficulties with concentration.  *Id.*  He testified that he experiences

24   headaches "on and off" throughout the day.  [AR 61].  He testified that he did not know the cause

25   of the headaches.  *Id.*  He testified that the headaches were generally alleviated with caffeine eye

26   drops.  *Id.*  He testified that the eyedrops helped with "the pressure" and "the itching."  *Id.*

27   Plaintiff testified that, due to his mental impairments, he has difficulty sleeping through the

28   night.  [AR 58].  He testified that he typically sleeps four to six hours cumulatively each night,

3

waking intermittently every fifteen to forty-five minutes. *Id.* He testified that he generally wakes up in the morning feeling "rejuvenated." *Id.* Plaintiff testified that he experiences "night terrors," "flashbacks," and racing thoughts related to his 2011 physical assault, though less often than he used to. [AR 59-60]. He testified that he usually experiences the flashbacks at night while sleeping, but every so often he experiences them during the day. [AR 59]. He testified that the daytime flashbacks last for roughly sixty seconds at a time. [AR 59-60]. He testified that he is able to manage the flashbacks with breathing techniques. *Id.* Plaintiff testified that he used to experience auditory and visual hallucinations, but denied any recent incidents. [AR 61-62]. He testified that he takes prescription medication which helps him sleep and alleviates night terrors. [AR 55, 58-59]. Plaintiff denied any side effects from his medications. [AR 55].

Plaintiff testified that he is currently housed in the general population unit of the prison. [AR 51]. He told the ALJ that he has a cellmate with whom he gets along well. *Id.* Plaintiff confirmed that he does not currently have any work assignments. [AR 52].

Plaintiff testified that, prior to entering prison, he lived with a roommate in Sacramento. [AR 54-55]. Plaintiff testified that he got along well with his roommate. [AR 55]. He testified that his roommate would drive him to the grocery store and help him with shopping. *Id.* He testified that he otherwise used a bicycle to get around. [AR 54].

On June 14, 2023, the ALJ issued a written decision which followed the Commissioner's five-step, sequential evaluation process for determining the merits of Plaintiff's application. [AR 25-37]. The five-step analysis requires the ALJ to consider whether the claimant: (1) has engaged in "substantial gainful activity" during the alleged period of disability; (2) has a medically determinable impairment or combination of such impairments that is "severe;" (3) has a condition that meets or equals the severity of a listed impairment; (4) has the residual functional capacity ("RFC") to return to their past relevant work; and, if not, (5) can perform other work in the national economy. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *Wischmann v. Kijakazi*, 68 F.4th 498, 504 & n.3 (9th Cir. 2023).

In the written decision issued on June 14, 2023, the ALJ determined, at step one, that Plaintiff had not engaged in substantial gainful employment since December 31, 2018, the

1    application date.  [AR 28].  At step two of the analysis, the ALJ found that Plaintiff suffered from

2    four severe impairments: PTSD; opioid use disorder; cannabis use disorder; and right eye

3    blindness.  *Id.*  The ALJ further found that Plaintiff suffered from two non-severe impairments:

4    asthma and hepatitis C.  *Id.*  The ALJ noted that Plaintiff also alleged chronic knee pain and foot

5    pain, but concluded that those were not medically determinable impairments.  *Id.*

6          At step three, the ALJ found that Plaintiff did not have an impairment or combination of

7    impairments that met or medically equaled the severity of one of the listed impairments in 20

8    C.F.R. Part 404, Subpart B, Appendix 1.  [AR 29].

9          Prior to reaching step four, the ALJ assessed Plaintiff's RFC and found him capable of

10   performing a full range of work at all exertional levels, subject to the following non-exertional

11   limitations:

12         He could not climb ladders, ropes, and scaffolds.  He should not work at
           unprotected heights or have the operational control of moving dangerous
13         machinery.  He should not be required to perform a job requiring peripheral vision
           on the right, such as on a moving, assembly line.  He could occasionally work with
14         supervisors, coworkers, and the general public.  He should not be required to
           perform a job involving precise near acuity, such as threading a needing [sic] or
15         reading print smaller than a newspaper.

16   [AR 31].

17         In establishing this RFC, the ALJ evaluated Plaintiff's subjective allegations of his pain

18   and other symptoms, the objective medical evidence, and the medical opinion evidence.  [AR 31-

19   36].  The ALJ determined that, while Plaintiff's medically determinable impairments could

20   reasonably be expected to cause his asserted symptoms, Plaintiff's testimony regarding the

21   intensity, persistence, and limiting effects of the symptoms was "not entirely consistent" with the

22   overall record.  [AR 32].  The ALJ likewise concluded that the objective medical evidence, though

23   supportive of some "significant" functional limitations, did not support the existence of limitations

24   greater than those set forth in the RFC assessment.  [AR 34].

25         In reaching these conclusions, the ALJ evaluated the prior administrative medical findings.

26   [AR 34-36].  The ALJ first discussed the administrative medical findings from Dr. Yee, dated

27   April 11, 2019, regarding his evaluation of the evidence at the initial determination stage relating

28   to Plaintiff's physical functioning.  [AR 34; *see* AR 97-98].  The ALJ noted that Dr. Yee did not

United States District Court
Northern District of California

1    ultimately issue an opinion on functioning due to "insufficient evidence." [AR 34].

2        The ALJ next discussed the opinion from Dr. Santiago, dated July 31, 2019, regarding her

3    review of updated evidence relating to Plaintiff's physical functioning at the reconsideration stage.

4    [AR 34-35; *see* AR 111-13]. The ALJ summarized Dr. Santiago's findings and determinations

5    regarding vision impairment: that Plaintiff had "limited right near acuity, far acuity, and field of

6    vision," that he had "single vision with blindness on the right and near normal vision on the left,"

7    and that he must "avoid work tasks requiring more than occasional visual ability or visual field

8    ability." [AR 35]. The ALJ found Dr. Santiago's opinion as to visual functioning only "partly

9    persuasive." *Id.*

10        The ALJ next discussed the opinion from Dr. Dennis, dated February 25, 2019, regarding

11    his initial stage review of the evidence relating to Plaintiff's mental functioning. [AR 35; *see* AR

12    98-99].

13        The ALJ next discussed the opinion from Dr. Hawkins, dated July 26, 2019, regarding her

14    reconsideration stage review of the evidence relating to Plaintiff's mental functioning. [AR 35;

15    *see* AR 114-15].

16        At step four, the ALJ determined that Plaintiff did not have any past relevant work. [AR

17    36].

18        Prior to reaching step five, the ALJ determined that Plaintiff was "defined as a younger

19    individual age 18-49, on the date the application was filed;" that Plaintiff "has at least a high

20    school education;" and that transferability of job skills was immaterial to the disability

21    determination. *Id.*

22        At step five, the ALJ found that, considering Plaintiff's age, education, work experience,

23    and RFC, "there are jobs that exist in significant numbers in the national economy" that Plaintiff

24    can perform. *Id.* The ALJ determined, based on the Vocational Expert's testimony, that Plaintiff

25    would be able to perform such "representative" jobs as agricultural produce packer, day worker,

26    and cook helper. [AR 36-37].

27        For that reason, the ALJ concluded that Plaintiff was not under a "disability," as defined by

28    the Act, and denied Plaintiff's application for supplemental security income. [AR 37]. That

United States District Court
Northern District of California

1  denial prompted Plaintiff's request for judicial review.  *See* Dkt. 1; AR 1-7.

2  **STANDARD OF REVIEW**

3  A district court has the "power to enter, upon the pleadings and transcript of the record, a

4  judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security,

5  with or without remanding the case for a hearing."  42 U.S.C. § 405(g).  The Court's review in

6  such cases is limited to determining: (1) whether substantial evidence supports the

7  Commissioner's decision; and (2) whether the Commissioner's decision comports with relevant

8  legal standards.  *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1052 (9th Cir. 2006) ("We

9  will uphold the Commissioner's denial of benefits if the Commissioner applied the correct legal

10  standards and substantial evidence supports the decision."); *accord Woods v. Kijakazi*, 32 F.4th

11  785, 788 (9th Cir. 2022); *see generally* 42 U.S.C. § 405(g).

12  "Substantial evidence" is "'more than a mere scintilla' but only 'such relevant evidence as

13  a reasonable mind might accept as adequate to support a conclusion.'"  *Woods*, 32 F.4th at 788

14  (quoting *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019)).  "Overall, the standard of review is highly

15  deferential."  *Kitchen v. Kijakazi*, 82 F.4th 732, 738 (9th Cir. 2023) (quoting *Rounds v. Comm'r*,

16  807 F.3d 996, 1002 (9th Cir. 2015)); *see Biestek*, 587 U.S. at 103 ("[W]hatever the meaning of

17  'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high.").  In

18  evaluating whether substantial evidence supports a finding, the Court "must review the

19  administrative record as a whole, weighing both the evidence that supports and the evidence that

20  detracts from the Commissioner's conclusion."  *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir.

21  1998).  Any conflict in the evidence is to be resolved by the ALJ, and not the Court.  *Smartt v.

22  Kijakazi*, 53 F.4th 489, 494 (9th Cir. 2022) ("Where evidence is susceptible to more than one

23  rational interpretation, the ALJ's decision must be affirmed.").

24  **ANALYSIS**

25  As summarized above, the ALJ's June 14, 2023 written decision under review followed the

26  Commissioner's five-step, sequential evaluation process for determining the merits of Plaintiff's

27  application.  [AR 25-37]; *see* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).  It is well-settled that,

28  under this analysis, the claimant has the burden to establish a *prima facie* case of disability at steps

United States District Court
Northern District of California

7

1  one through four.  *Triechler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1096 n.1 (9th Cir.

2  2014) (quoting *Hoopai v. Astrue*, 499 F.3d 1071, 1074-75 (9th Cir. 2007)).  The burden then shifts

3  to the Commissioner, at step five, to show that the claimant retains sufficient RFC to perform

4  work in the national economy, given the claimant's age, education, and work experience.  *Id.*

5          A finding that a claimant is "disabled" or "not disabled" at any point in the five-step

6  review is conclusive and terminates the analysis.  *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir.

7  1999) (citing 20 C.F.R. § 404.1520).  To be disabling, the claimant's condition must be so

8  functionally limiting as to preclude any substantial gainful activity for at least twelve consecutive

9  months.  42 U.S.C. §§ 423(d)(1)(A), (2)(A).

10         Plaintiff challenges the ALJ's decision (which became the Commissioner's final decision

11  for purposes of judicial review) on several grounds.  First, Plaintiff argues that the ALJ's RFC

12  determination is not supported by substantial evidence, because the ALJ failed to provide "clear,

13  convincing, and well-supported reasons" for discounting Plaintiff's allegations and testimony

14  relating to the severity of his symptoms from vision impairment.  [Dkt. 9 at 7].  Second, Plaintiff

15  argues that the ALJ's RFC determination is not supported by substantial evidence, because the

16  ALJ improperly discounted the opinion from Dr. Santiago relating to Plaintiff's functional

17  limitations resulting from vision impairment.  *Id.* at 11-15.  Third, Plaintiff argues that the ALJ

18  failed to include any mental limitations in his RFC finding to account for Plaintiff's mild deficits

19  in concentration, persistence, and maintaining pace without adequate explanation.  *Id.* at 17-20.

20  Finally, Plaintiff argues that the ALJ "failed to properly develop the record by obtaining an

21  updated medical opinion and instead served as his own medical expert."  *Id.* at 15-17.

22         The Commissioner argues, in response, that the ALJ properly considered the entire

23  evidentiary record and followed the applicable, controlling law in determining that Plaintiff is not

24  disabled for purposes of the Act.  [Dkt. 13 at 5-18].

25  **I.      Whether the ALJ Erred in Evaluating Plaintiff's Credibility**

26         Plaintiff first argues that the ALJ's RFC determination is not supported by substantial

27  evidence, because the ALJ improperly discounted Plaintiff's allegations and testimony regarding

28  the severity of his symptoms resulting from vision impairment.  [Dkt. 9 at 7-11].

United States District Court
Northern District of California

8

United States District Court
Northern District of California

1    "[S]ubstantial evidence does not support an ALJ's RFC assessment if 'the ALJ improperly

2    rejected [the claimant's] testimony as to the severity of his pain and symptoms.'" *Ferguson v.*

3    *O'Malley*, 95 F.4th 1194, 1199 (9th Cir. 2023) (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028,

4    1035 (9th Cir. 2007)).  The Ninth Circuit has established a two-part analysis for determining the

5    extent to which a claimant's symptoms testimony must be credited.  *Trevizo v. Berryhill*, 871 F.3d

6    664, 678 (9th Cir. 2017).  "First, the ALJ must determine whether the claimant has presented

7    objective medical evidence of an underlying impairment which could reasonably be expected to

8    produce the pain or other symptoms alleged." *Ferguson*, 95 F.4th at 1199 (quoting *Garrison v.*

9    *Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014)).  "If the claimant meets the first step of this analysis

10   and there is no evidence of malingering, [then in the second step] the ALJ can reject the claimant's

11   testimony about the severity of their symptoms only by offering specific, clear and convincing

12   reasons for doing so." *Id.* (quoting *Garrison*, 759 F.3d at 1014-15) (alteration omitted).

13        The "clear and convincing" standard requires the ALJ to "specifically identify" which

14   portions of the claimant's testimony the ALJ finds "not to be credible" and "explain what evidence

15   undermines that testimony."  *Lambert v. Saul*, 980 F.3d 1266, 1277 (9th Cir. 2020) (quoting

16   *Treichler*, 775 F.3d at 1102) (remaining citations omitted).  "This is not an easy requirement to

17   meet: 'The clear and convincing standard is the most demanding required in Social Security

18   cases.'"  *Trevizo*, 871 F.3d at 678 (quoting *Garrison*, 759 F.3d at 1014-15).

19        "An ALJ may consider a range of factors in assessing credibility, including '(1) ordinary

20   techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent

21   statements concerning the symptoms, and other testimony by the claimant that appears less than

22   candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a

23   prescribed course of treatment; and (3) the claimant's daily activities.'" *Ghanim v. Colvin*, 763

24   F.3d 1154, 1163 (9th Cir. 2014) (quoting *Smolen v. Chater*, 80 F.3d 1273, 1287 n.7 (9th Cir.

25   1996)).  However, the ALJ may not "reject a claimant's subjective complaints based solely on a

26   lack of medical evidence to fully corroborate the alleged severity of pain." *Smartt*, 53 F.4th at 494

27   (quoting *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005)).  Nor may the ALJ "justify a

28   credibility finding 'by ignoring competent evidence in the record that suggests another result.'"

1    *Diedrich v. Berryhill*, 874 F.3d 634, 643 (9th Cir. 2017) (quoting *Gallant v. Heckler*, 763 F.2d

2    1450, 1456 (9th Cir. 1984)).

3          Here, Plaintiff alleges physical impairments resulting from total blindness in his right eye

4    and decreased vision in his left eye, as well as mental impairments resulting from PTSD.  [AR 104

5    ("Blind in rt eye; PTSD; Loosing [sic] vision in left eye")].  In her written decision, the ALJ found

6    that Plaintiff's impairments could reasonably have given rise to the severe pain and functional

7    limitations to which Plaintiff testified that he suffers.  [AR 31-32].

8          As a result, because the ALJ's decision relied on evaluating the credibility of Plaintiff's

9    testimony about pain and symptoms, the ALJ was required to make the legally mandated

10   subsidiary findings required by the Ninth Circuit as to Plaintiff's own testimony (*i.e.*, specifically

11   identify the testimony found not credible and explain what evidence supports that finding).

12   Because the ALJ made no finding that Plaintiff was malingering, the ALJ was required to give

13   "specific, clear, and convincing reasons" in support of her adverse credibility finding.  *Garrison*,

14   759 F.3d at 1014-15.  This standard "requires an ALJ to show [their] work."  *Smartt*, 53 F.4th at

15   499.  However, the standard does not require the ALJ "to perform a line-by-line exegesis of the

16   claimant's testimony" or "to draft dissertations when denying benefits."  *Lambert*, 980 F.3d at

17   1277.

18         In her written decision, the ALJ found that Plaintiff's testimony concerning the intensity,

19   persistence, and limiting effects of his symptoms was not consistent with the overall record.  [AR

20   34].  As to vision impairment,[2] the ALJ provided the following justifications for her adverse

21   credibility finding: (1) that Plaintiff's testimony was inconsistent with the objective medical

22   evidence showing that, though he was totally blind in his right eye, "his vision was near normal on

23   the left;" (2) that Plaintiff's treatment was "limited to dry eyes;" (3) that there was "little evidence

24   of related follow up" by Plaintiff with respect to his treatment; and (4) that Plaintiff's testimony

25   was inconsistent with Plaintiff's own statements regarding his abilities, including "that he can see

26   fairly well out of the left eye," "that he can read," "that he would ride his bike to get around before

27   _____

28   [2] Plaintiff does not challenge the ALJ's adverse credibility finding with respect to his mental
     impairments.

United States District Court
Northern District of California

his incarceration," and "that he was on a waitlist for a work assignment" at the prison.  [AR 34].

In making this adverse credibility finding, the ALJ included a fairly detailed summary of the medical records at issue, referencing, among other things, a record, dated March 6, 2019, noting "blindness in the right eye and normal vision in the left eye, with an indication that [Plaintiff] did not have low vision" [AR 33; *see* AR 566-67]; records from late April 2019 showing that Plaintiff "requested glasses and Neurontin (gabapentin) for right eye nerve pain, but this does not appear to have been prescribed," that he "was advised that he did not qualify for prescription eyeglasses at that time," that he "denied blurred vision/diplopia to the left eye," that he "claimed to read approximately twenty hours daily," and that his left eye visual acuity was 20/70 without corrective lenses [AR 33-34; *see* AR 575, 600, 608, 611-12]; a record showing that Plaintiff received a prescription for single vision lenses one month later [AR 34; *see* AR 549]; a record, dated May 15, 2019, noting Plaintiff as having had "no ophthalmology follow up since March 2018" and further noting that Plaintiff "complained of eye pain, worse at night, which did not last a long time" [AR 34; *see* AR 606]; a record, dated June 12, 2019, showing that Plaintiff's "vision without correction was no light perception (NLP) on the right and 20/25 on the left," and recommending that Plaintiff "follow up with ophthalmology in one year" [AR 34; *see* AR 546, 605]; and subsequent records from 2020, 2021, and 2022 showing that Plaintiff was prescribed eye drops for dry eyes [AR 34; *see* AR 817-18, 865, 868, 878].

Plaintiff argues that the ALJ mischaracterized certain evidence with respect to her finding that Plaintiff's testimony was inconsistent with the medical evidence.  [Dkt. 9 at 8-10]. Specifically, Plaintiff takes issue with the following sentence in the ALJ's written decision summarizing an April 2019 treatment record: "In April 2019, [Plaintiff] requested glasses and Neurontin (gabapentin) for right eye nerve pain, but this does not appear to have been prescribed." [AR 33].  Plaintiff argues that, while true that the cited treatment record "inexplicably says that he does not qualify for prescription glasses," a subsequent record shows that Plaintiff ultimately received prescription glasses one month later.  [Dkt. 9 at 8-9].  In addition, Plaintiff argues that, while he "was not prescribed Gabapentin right away," records indicates that he was ultimately prescribed the medication in September 2020.  *Id.* at 9-10.  Plaintiff argues that this merely shows

1   "that obtaining appropriate medical care or certain prescriptions in prison is not always a simple

2   process." *Id.* at 10.

3          The Court finds no error in the ALJ's determination that Plaintiff's testimony as to his

4   symptoms regarding his left eye was inconsistent with medical evidence showing "near normal

5   vision on the left."  The medical records cited by the ALJ indicate that Plaintiff did not have

6   significant visual impairment in his left eye.  The ALJ acknowledged and credited the evidence

7   showing that Plaintiff was totally blind in his right eye, but found that the medical evidence did

8   not show evidence of ongoing problems with left eye vision, particularly after Plaintiff received

9   corrective lenses in May 2019.  Plaintiff points to records showing decreased visual acuity in his

10  left eye, for which prescription glasses were ordered.  However, the ALJ acknowledged that

11  Plaintiff received prescription glasses and accurately summarized this information in the written

12  decision.  [AR 34 ("The following month he had a prescription for glasses for single vision.")].

13  The ALJ cited records showing that Plaintiff's left eye vision improved with the glasses.  None of

14  the medical records suggest that Plaintiff's left eye vision failed to improve (or worsened) after he

15  received prescription glasses.  Plaintiff argues that the ALJ improperly construed records

16  indicating Plaintiff's request for prescription medication for right eye nerve pain was not

17  immediately filled.  However, this argument regarding the right eye does not undermine the ALJ's

18  reliance on findings regarding the left eye as a basis to discount Plaintiff's testimony.

19         Therefore, the Court finds no error in the ALJ's reliance on relatively normal left eye

20  findings as a basis to discount Plaintiff's allegations of vision impairment.  *Cf. Reddick*, 157 F.3d

21  at 723 (finding ALJ's decision not supported by substantial evidence, where the ALJ's

22  "paraphrasing of record material [was] not entirely accurate regarding the content or tone of the

23  record"); *Nestor S. v. Kijakazi*, No. 3:23-cv-01845-JSC, 2023 WL 8007106, at *2 (N.D. Cal. Nov.

24  16, 2023) ("The ALJ erred in cherry picking evidence supporting his mild examination findings,

25  while ignoring the contrary evidence."); *De La Rosa v. Comm'r of Soc. Sec'y Admin.*, No. CV-17-

26  02022-PHX-DGC, 2018 WL 2164309, at *6 (D. Ariz. May 10, 2018) (finding ALJ failed to

27  provide clear and convincing reasons for adverse credibility finding, where the ALJ relied on

28  records showing "minimal and effective vision treatment" but much of the evidence cited by the

*United States District Court*
*Northern District of California*

12

1    ALJ showed "continued vision problems as well").

2         As an additional justification for the adverse credibility finding, the ALJ concluded that

3    evidence of a "limited" treatment regimen with minimal "follow up" further discredited Plaintiff's

4    allegations of significant visual impairment.  [AR 34].  However, it is well-settled that a lack of

5    corroborating objective medical evidence alone cannot justify an ALJ's adverse credibility

6    finding.  *See Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) ("While subjective pain

7    testimony cannot be rejected on the sole ground that it is not fully corroborated by objective

8    medical evidence, the medical evidence is still a relevant factor in determining the severity of the

9    claimant's pain and its disabling effects."); *Smartt*, 53 F.4th at 494.

10        Plaintiff argues that the amount and type of treatment that he received for his eye

11   impairments is not a clear and convincing reason to discredit his testimony.  [Dkt. 9 at 10].

12   Plaintiff argues that "the ALJ does not identify what other treatment Plaintiff could have followed

13   up with."  *Id.*  He argues that "[t]here does not appear to be much he could have done to improve

14   his vision, and his providers did not offer any other treatments beyond medication."  *Id.*

15        An ALJ may consider evidence of conservative treatment, as well as gaps in treatment, in

16   evaluating whether the claimant's symptoms are as severe as alleged.  *Marsh v. Colvin*, 792 F.3d

17   1170, 1173 n.2 (9th Cir. 2015) (finding substantial evidence supporting ALJ's adverse credibility

18   determination, where "gaps existed in [the claimant's] treatment regimen" and the claimant's

19   treatment was "routine or conservative"); *Orn  v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007) ("We

20   have long held that an 'unexplained, or inadequately explained, failure to seek treatment' may be

21   the basis for an adverse credibility finding unless one of a 'number of good reasons for doing so'

22   applies."); *Osenbrock v. Apfel*, 240 F.3d 1157, 1166 (9th Cir. 2001) (affirming ALJ's adverse

23   credibility finding where the claimant "ha[d] not participated in any significant pain regimen or

24   therapy program"); *Gilder v. Berryhill*, 703 F. App'x 597, 598 (9th Cir. 2017) (finding substantial

25   evidence supporting adverse credibility finding where "the ALJ noted that [the claimant] failed to

26   seek treatment despite the availability of 'reduced pay or free treatment at any clinic'").

27        However, "an adjudicator must not draw any inferences about an individual's symptoms

28   and their functional effects from a failure to seek or pursue regular medical treatment without first

United States District Court
Northern District of California

13

United States District Court
Northern District of California

considering any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment." *Orn*, 495 F.3d at 638 (quoting SSR 96-7p at 7-8); *Carmickle v. Comm'r, Soc. Sec'y Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008) ("[A]lthough a conservative course of treatment can undermine allegations of debilitating pain, such fact is not a proper basis for rejecting the claimant's credibility where the claimant has a good reason for not seeking more aggressive treatment.").

An ALJ errs in relying on a conservative treatment plan to support an adverse credibility finding "where the record does not reflect that more aggressive treatment options are appropriate or available." *Lapeirre-Gutt v. Astrue*, 382 F. App'x 662, 664 (9th Cir. 2010); *see* SSR 16-3p (stating an ALJ must consider "possible reasons" for conservative treatment and an ALJ may need to contact the claimant or raise the issue at the hearing); *Carmickle*, 533 F.3d at 1162 (finding use of ibuprofen not a proper basis for rejection of claimant's testimony, where other pain medication caused "adverse side effects"); *Eitner v. Saul*, 835 F. App'x 932, 933 (9th Cir. 2021) (holding claimant's failure to pursue more aggressive treatment was not a clear and convincing reason for rejecting the claimant's testimony, where the ALJ "failed to consider possible reasons why [the claimant] did not seek or obtain treatment" and, at the hearing, the ALJ asked the claimant only "whether he had received any specific treatment for the condition, but the inquiry ended there"); *Nestor S.*, 2023 WL 8007106, at *3 ("[C]onservative medical treatment can only be used as a basis for discounting a claimant's testimony where the ALJ identifies the more aggressive treatment options that were available and appropriate and considers the reasons the claimant did not pursue more aggressive treatment.").

Here, the ALJ relied on Plaintiff's conservative treatment regimen and minimal post-2019 follow-up as a basis to discredit Plaintiff's testimony, but the ALJ failed to identify the more aggressive treatment options that were available, or to discuss Plaintiff's reasons for not pursuing more aggressive and/or frequent treatment between 2020 and 2022 (particularly given that Plaintiff was incarcerated during that time period as well as the circumstances resulting from the COVID pandemic and lockdown). The ALJ did not adequately discuss Plaintiff's explanation that

1   his medical providers in prison did not offer any other treatments beyond medication.

2   Accordingly, the Court finds that reliance on a conservative treatment regimen and reliance on

3   minimal post-2019 follow-up were insufficient bases to discredit Plaintiff's testimony. *See Nestor*

4   *S.*, 2023 WL 8007106, at *3 ("The ALJ erred by failing to consider Plaintiff's reasons for not

5   pursuing more aggressive treatment."); *cf. Smith v. Berryhill*, No. 18-cv-00887-VKD, 2019 WL

6   4848165, at *20 (N.D. Cal. Sept. 30, 2019) (finding no error in ALJ's credibility analysis, where

7   the ALJ specifically noted that, in spite of the severe pain alleged by the claimant, the record did

8   not indicate that any of the claimant's medical providers "undertook comprehensive examinations

9   or recommended aggressive medication treatments" for her conditions).

10      Finally, the ALJ discounted Plaintiff's symptoms testimony based on his reported level of

11   activity, observing that Plaintiff "was able to read, ride his bike," "confirmed that he can see fairly

12   well out of the left eye," and "stated that he was on a waitlist for a work assignment  and does not

13   appear to be exempted from the same." [AR 34]. Plaintiff argues that these activities do not

14   contradict his testimony regarding his limitations, and thus, do not support the ALJ's credibility

15   finding. [Dkt. 9 at 10].

16      An ALJ may consider inconsistencies either in the claimant's testimony or between the

17   testimony and the claimant's conduct, an unexplained or inadequately explained failure to seek

18   treatment or to follow a prescribed course of treatment, and whether the claimant engages in daily

19   activities inconsistent with the alleged symptoms. *Orn*, 495 F.3d at 639. However, "the mere fact

20   that a [claimant] has carried on certain daily activities, such as grocery shopping, driving a car, or

21   limited walking for exercise, does not in any way detract from [their] credibility as to [their]

22   overall disability." *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001). The Ninth Circuit

23   has "repeatedly warned that ALJs must be especially cautious in concluding that daily activities

24   are inconsistent with testimony about pain, because impairments that would unquestionably

25   preclude work and all the pressures of a workplace environment will often be consistent with

26   doing more than merely resting in bed all day." *Garrison*, 759 F.3d at 1016; *see also Smolen v.*

27   *Chater*, 80 F.3d 1273, 1287 n.7 (9th Cir. 1996) ("The Social Security Act does not require that

28   claimants be utterly incapacitated to be eligible for benefits, and many home activities may not be

United States District Court
Northern District of California

15

1    easily transferable to a work environment where it might be impossible to rest periodically or take

2    medication.").

3          Here, the ALJ found Plaintiff's ability to read and ride a bicycle prior to his incarceration

4    inconsistent with the severity of symptoms he alleged.  [AR 34 ("Overall, given that he was able

5    to read, ride his bike, and had near normal vision on the left, the record is not consistent with the

6    level of vision allegations.").  The ALJ also noted that Plaintiff "stated that he was on a waitlist for

7    a work assignment and does not appear to be exempted from the same."  *Id.*

8          The Court finds that the ALJ's adverse credibility finding, to the extent based on Plaintiff's

9    reported activities, is not supported by substantial evidence.  Specifically, the Court finds that the

10   ALJ erred in two ways, first, by failing to explain how Plaintiff's reported activities undermine his

11   subjective testimony, and second, by failing to explain how the activities transfer to a work

12   setting.

13         First, the ALJ did not explain how Plaintiff's general ability to read and ride a bicycle, as

14   described by Plaintiff at the hearing, are inconsistent with his claimed limitations.  *Orn*, 495 F.3d

15   at 639.  Plaintiff testified that he reads daily, but he also told the ALJ that he requires large print

16   text to do so and that he can only read for twenty minutes at a time before he must rest.  [AR 53-

17   54, 56].  The ALJ concluded that Plaintiff's statements were "inconsistent with this [sic] reports to

18   his treating physicians."  [AR 34].  Specifically, the ALJ referenced an April 2019 treatment

19   record indicating that Plaintiff reported reading "approximately two hours daily."  *Id.* (citing AR

20   611).  However, the ALJ does not explain how Plaintiff's ability to read two hours cumulatively is

21   inconsistent with his testimony that he can only read for twenty minutes at a time before needing

22   rest.

23         The ALJ also noted that Plaintiff did not appear to have reported "eye fatigue or limited

24   size font ability" to his treatment providers.  *Id.*  However, as noted above, a lack of corroborating

25   objective medical evidence alone cannot justify an ALJ's adverse credibility finding.  *See Rollins*,

26   261 F.3d at 857 ("subjective pain testimony cannot be rejected on the sole ground that it is not

27   fully corroborated by objective medical evidence[.]"); *Smartt*, 53 F.4th at 494.

28         The ALJ also relied on Plaintiff's testimony that he used a bicycle to get around prior to

United States District Court
Northern District of California

his incarceration. [AR 34 ("He stated that he would ride his bike to get around before his incarceration (Hearing Testimony).")]. However, the ALJ did not engage in any inquiry at the hearing as to the frequency and duration of Plaintiff's bicycle riding. Further, Plaintiff told the ALJ that he relied on his roommate to drive him to the grocery store and assist him with shopping. [AR 55]. The ALJ fails to discuss this portion of Plaintiff's testimony. *See Garrison*, 759 F.3d at 1016 (finding ALJ's selective presentation of the claimant's reported daily activities erroneous, where the ALJ failed to note that the claimant had to rest between activities, needed help to do the activities, and could not always complete the activities given her pain); *A.P. v. Kijakazi*, No. 23-cv-01184-EMC, 2024 WL 116307, at *10 (N.D. Cal. Jan. 10, 2024) ("The ALJ cannot mischaracterize statements and documents in the record or take these out of context in order to reach [her] conclusion on the claimant's credibility."). The ALJ failed to explain (or seek additional testimony) on the extent, distance, duration of Plaintiff's ability to ride a bicycle; failed to take into account whether Plaintiff's ability to ride a bicycle was limited by any conditions such as time of day, amount of lighting, locations, or other traffic; and failed to explain why the mere ability to ride a bicycle for even the shortest amount of time under optimal conditions for someone blind in one eye would be sufficient justification for an adverse credibility determination.

Second, the ALJ did not discuss how Plaintiff's activities of reading and riding a bicycle would be transferable to a work setting. "The ALJ must make specific findings relating to the daily activities and their transferability to conclude that a claimant's daily activities warrant an adverse credibility determination." *Orn*, 495 F.3d at 639 (cleaned up). Here, the ALJ failed to connect Plaintiff's use of bicycle and ability to read with any work-related tasks. And because the ALJ did not have a factual record regarding any limitations on the bicycle riding, the ALJ did not explain how any limited amount of bicycle riding (if Plaintiff were so limited) would be transferable to any work-related tasks. Nor did the ALJ explain how an ability to only read about twenty minutes before needing rest would be transferable to a work setting. Accordingly, this was error. *See id.* ("We agree with [the claimant] that reading, watching television, and coloring in coloring books are activities that are so undemanding that they cannot be said to bear a meaningful relationship to the activities of the workplace."); *Nestor S.*, 2023 WL 8007106, at *3 (finding

1    adverse credibility finding was not supported by substantial evidence where "the ALJ failed to

2    connect [the claimant's] use of a stationary bike with any work-related tasks" and "ignored" the

3    claimant's testimony that "riding the bike causes pain"); *Francis v. Saul*, No. 2:18-cv-02589 AC,

4    2020 WL 5073935, at *6 (E.D. Cal. Aug. 27, 2020) ("Given the ALJ's failure to address the

5    minimal extent of the tasks at issue and whether they are transferable, the conclusion that

6    plaintiff's daily activities contradict his allegations regarding the intensity of her pain is not

7    supported by substantial evidence.").

8         In sum, the Court finds that the ALJ failed to provide sufficiently "specific, clear, and

9    convincing reasons" for discounting Plaintiff's testimony regarding symptoms from vision

10   impairment.  *Garrison*, 759 F.3d at 1014-15.  Remand on this issue is, therefore, required.  *See*

11   *Austin v. Saul*, 818 F. App'x 725, at *4 (9th Cir. 2020) ("The errors discussed above are

12   significant enough, and sufficiently intertwined with the aspects of the ALJ's analysis that find

13   support in the record, that we cannot conclude they were harmless.").

14   **II.    Whether the ALJ Erred in Evaluating the Medical Source Opinions**

15        Plaintiff also challenges the ALJ's RFC determination on the basis that the ALJ failed to

16   properly evaluate and weigh the medical source opinion from Dr. Santiago.  [Dkt. 9 at 11-15].

17        The ALJ has a duty to evaluate all medical source opinions and "evaluate their

18   persuasiveness" based on five factors: (1) supportability; (2) consistency; (3) relationship with the

19   claimant; (4) specialization; and (5) "other factors that tend to support or contradict a medical

20   opinion," such as "evidence showing a medical source has familiarity with the other evidence in

21   the claim or an understanding of [the SSA] disability program's policies and evidentiary

22   requirements."  20 C.F.R. §§ 404.1520c(a), (c)(1)-(5), 416.920c(a)-(c); *see also Woods*, 32 F.4th

23   at 787.

24        The "most important" factors for the ALJ to consider are "supportability" and

25   "consistency."  *Woods*, 32 F.4th at 791 (quoting 20 C.F.R. § 404.1520c).  "Supportability"

26   addresses how closely connected a medical opinion is to the evidence and the medical source's

27   explanations: "The more relevant the objective medical evidence and supporting explanations

28   presented by a medical source are to support his or her medical opinion(s) or prior administrative

United States District Court
Northern District of California

1   medical finding(s), the more persuasive the medical opinion(s) or prior medical finding(s) will

2   be." 20 C.F.R. § 404.1520c(c)(1); *Woods*, 32 F.4th at 791-92 ("Supportability means the extent to

3   which a medical source supports the medical opinion by explaining the 'relevant . . . objective

4   medical evidence.'").  "Consistency," on the other hand, compares a medical opinion to the

5   evidence: "The more consistent a medical opinion(s) or prior administrative medical finding(s) is

6   with the evidence from other medical sources and nonmedical sources in the claim, the more

7   persuasive the medical opinion(s) or prior administrative medical finding(s) will be."  20 C.F.R.

8   § 404.1520c(c)(2); *Woods*, 32 F.4th at 792 ("Consistency means the extent to which a medical

9   opinion is 'consistent . . . with the evidence from other medical sources and nonmedical sources in

10  the claim.").  The ALJ must explain in their decision "how persuasive" they find each medical

11  source opinion and must explicitly discuss address how they "considered the supportability and

12  consistency factors" in reaching those findings.  *Woods*, 32 F.4th at 792; *see* 20 C.F.R. §

13  404.1520c(b)(2).  However, the ALJ is not required to explicitly discuss any of the remaining

14  three factors, unless there are differing medical opinions on an issue and those opinions are

15  equally well-supported and consistent with the record.  20 C.F.R. § 404.1520c(b)(2)-(3).  The

16  ALJ's persuasiveness explanation must be supported by substantial evidence.  *Woods*, 32 F.4th at

17  792.

18      Here, on July 31, 2019, the reconsideration level non-examining state agency physician,

19  Dr. Santiago, completed a Physical RFC Assessment on Plaintiff's abilities.  [AR 112-13].  Based

20  on her review of the medical evidence, Dr. Santiago found that Plaintiff had limited near acuity on

21  the right side, limited far acuity on the right side, and a limited field of vision on the right side.  *Id.*

22  Dr. Santiago opined that, due to Plaintiff's "single vision with blindness on [right] and near

23  normal vision on [left]," Plaintiff should "[a]void work tasks requiring more than occasional

24  visual ability or Visual Field ability."  [AR 113].

25      In her written decision, the ALJ summarized Dr. Santiago's opinion, that Plaintiff had

26  "limited right near acuity, far acuity, and field of vision," that he had "single vision with blindness

27  on the right and near normal vision on the left," and that he must "avoid work tasks requiring more

28  than occasional visual ability or visual field ability."  [AR 35].  The ALJ ultimately concluded that

United States District Court
Northern District of California

1    the opinion was only "partly persuasive" as it pertained to Plaintiff's limitations from vision

2    impairment for the following reasons:

> This opinion is not well supported by any means. The occasional visual limitations appear arbitrary, given the left sided findings and the lack of combined vision findings to support such significant limitations. While the claimant does have limited right sided vision, the specifics as to the 'limited' quantification are vague, and the combined resulted limitations noted in the narrative are overly restrictive, given the minimal follow up, lack of left sided findings, and inconsistent reported activities of daily living. Again, the claimant reported riding a bike to get around and is currently awaiting a work assignment and does not appear to be excepted due to his vision (Hearing Testimony). There are no reports to his clinicians regarding limited font size and eye fatigue. Rather, he reported reading two hours a day to his clinicians. Overall, the reconsideration opinion on visual limitations is neither well supported, nor consistent with the medical evidence and, thus, not persuasive.

10   *Id.*

11       Plaintiff argues that the ALJ failed to provide an adequate rationale for discounting Dr.

12   Santiago's opinion testimony as to vision limitations. [Dkt. 9 at 13-15]. As to the supportability

13   factor, Plaintiff argues that there was "nothing arbitrary or vague" about Dr. Santiago's analysis.

14   *Id.* at 13. Plaintiff argues that Dr. Santiago appropriately found that Plaintiff had "single

15   (monocular) vision deficit" (due to right eye blindness) which "affected binocular vision overall."

16   *Id.* at 13-14. Plaintiff argues that that the ALJ "improperly substituted in her own medical

17   conclusion by insisting that Plaintiff would need 'left side findings'" to support Dr. Santiago's

18   ultimate conclusion that Plaintiff must avoid work tasks requiring more than occasional visual

19   ability or visual field ability. *Id.* at 14. As to the consistency factor, Plaintiff argues that Dr.

20   Santiago's opinions regarding Plaintiff's visual limitations were not inconsistent with the medical

21   evidence or with Plaintiff's reported activities and statements to his treatment providers (similar to

22   the arguments raised by Plaintiff regarding the ALJ's adverse credibility determination). *Id.* at 14-

23   15.

24       Supportability Analysis

25       The Court finds that the ALJ impermissibly discounted Dr. Santiago's opinions due to a

26   lack of supporting explanation. In evaluating supportability, the ALJ determined that Dr.

27   Santiago's opinion that Plaintiff's acuity and field of vision were "limited" was "vague." [AR 35

28   ("While the claimant does have limited right sided vision, the specifics as to the 'limited'

United States District Court
Northern District of California

quantification are vague[.]")].

An ALJ may discount an opinion due to vagueness if the opinion is not supported by examination findings. *See Meanel v. Apfel*, 172 F.3d 1111, 1114 (9th Cir. 1999) (finding medical source opinion that the claimant would have "some" diminution in their concentration skills conclusory and inadequately supported by relevant medical evidence). However, if the opinion is supported by examination findings, then the ALJ has a duty to develop the record to clarify any consequential ambiguities either contained in or caused by the opinion before discounting it for vagueness. *See Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001) ("Ambiguous evidence, or the ALJ's own finding that the record is inadequate to allow for proper evaluation of the evidence, triggers the ALJ's duty to 'conduct an appropriate inquiry.'").

Here, there is nothing "vague" about Dr. Santiago's language that Plaintiff's right eye visual acuity and field of vision were "limited." Dr. Santiago's opinion explicitly references medical records showing that Plaintiff had no vision in his right eye because he was stabbed in that eye in 2011. [AR 108 ("R eye missing," "loss R eye vision," "OD blind," "blind R eye d/t being stabbed in eye in 2011")]. The Court finds clear error in the ALJ rejecting the opinion testimony in light of the clear record evidence that Plaintiff is blind in his right eye. Accordingly, the Court finds that the ALJ's determination is not supported by substantial evidence. *Cf. Baer v. Colvin*, No. 1:21-cv-01701-BAM, 2025 WL 83326, at *10 (E.D. Cal. Jan. 13, 2025).

The ALJ also determined that Dr. Santiago's opinion limiting Plaintiff to work tasks requiring no more than "occasional visual ability" was "arbitrary," because of the asserted lack of findings showing either left eye impairment or combined vision impairment. [AR 35 ("The occasional visual limitations appear arbitrary, given the left sided findings and the lack of combined vision findings to support such significant limitations.")]. The underlying premise of the ALJ's conclusion is that vision impairment in only one eye cannot adversely affect binocular vision. However, the ALJ offered no conflicting medical source opinion or evidence indicating that Plaintiff's right eye blindness did not affect his binocular vision overall. The ALJ was not qualified to make this determination based solely on her own lay opinion. *See Tackett v. Apfel*, 180 F.3d 1094, 1102-03 (9th Cir. 1999) (An ALJ "cannot arbitrarily substitute his or her own

United States District Court
Northern District of California

1    judgment for competent medical opinion," and must not "succumb to the temptation to play doctor

2    and make [his or her] own independent medical findings."); *Day v. Weinberger*, 522 F.2d 1154,

3    1156 (9th Cir. 1975) ("[T]he Hearing Examiner, who was not qualified as a medical expert, should

4    not have gone outside the record to medical textbooks for the purpose of making his own

5    exploration and assessment as to the plaintiff's physical condition."). Accordingly, the Court

6    finds that the ALJ's determination is not supported by substantial evidence.

7         Consistency Analysis

8         In evaluating the consistency factor, the ALJ determined that Dr. Santiago's opinions on

9    visual limitations were "overly restrictive," given "the minimal follow up, lack of left sided

10   findings, and inconsistent reported activities of daily living." [AR 35]. These are the identical

11   reasons that the ALJ relied on as the basis for rejecting Plaintiff's symptoms testimony for lack of

12   credibility. Accordingly, to the extent that the ALJ relied on Plaintiff's "minimal follow up" and

13   "inconsistent reported activities of daily living" to discount Dr. Santiago's opinion, the Court finds

14   that the ALJ's determination regarding the consistency of Dr. Santiago's opinion is not supported

15   by substantial evidence for the same reasons that the ALJ's adverse credibility determination is not

16   supported by substantial evidence as detailed above. *Nestor S.*, 2023 WL 8007106, at *5. The

17   Court finds that the ALJ erred in finding Dr. Santiago's opinion on visual limitations "overly

18   restrictive" based on "minimal followup" and "daily activities" for the same reasons that those

19   bases are not sufficient to justify rejecting Plaintiff's testimony for lack of credibility.

20        To the extent that the ALJ found Dr. Santiago's opinion inconsistent based on a lack of left

21   eye findings, the ALJ failed to explain how the normal left eye findings were inconsistent with Dr.

22   Santiago's assessed limitations. Dr. Santiago expressly noted in her opinion that Plaintiff had

23   "near normal" left eye vision. [AR 113]. Dr. Santiago concluded that Plaintiff's right eye

24   blindness affected Plaintiff's overall binocular vision such that he must avoid work tasks requiring

25   more than occasional visual ability or visual field ability. *Id.* The ALJ's reasoning here appears to

26   be the same legally improper substitution of her lay opinion for that of a medical professional, as

27   discussed above. The ALJ appears to fundamentally believe that a person's overall binocular

28   vision cannot be impaired, even if a person is blind in one eye, as long as that person has near-

normal vision in the remaining eye.  That is, the only reason the ALJ characterizes Dr. Santiago's opinion testimony as "inconsistent" and "arbitrary" is because the ALJ starts from an underlying, unsupported, and unspoken medical assumption that near-total blindness in one eye does not impair overall vision where there is near-normal vision in the remaining eye.  Simply because the ALJ concluded that Dr. Santiago's opinion was inconsistent with this unsupported assumption is not a proper basis to reject Dr. Santiago's opinion.  Therefore, the Court does not find the lack of left eye findings to be substantial evidence supporting the ALJ's conclusion that Dr. Santiago's opinion was inconsistent with the medical record.

For the foregoing reasons, the Court finds that the ALJ erred in her evaluation of the persuasiveness of Dr. Santiago's opinion and also finds that the ALJ's determination in this regard is not supported by substantial evidence (particularly as to the most important factors of supportability and consistency).

### III.     Whether the ALJ Erred by Failing to Adequately Develop the Record

Plaintiff argues that the ALJ failed to adequately develop the record and instead substituted her own judgment for that of a medical expert's when determining Plaintiff's RFC.  [Dkt. 9 at 15-17].  Specifically, Plaintiff argues that while two state agency physicians reviewed Plaintiff's medical records regarding his visual impairments, the initial stage reviewer ultimately did not render an opinion on Plaintiff's functioning, and the ALJ rejected the limitations in Dr. Santiago's opinion.  *Id.* at 16.  In addition, Plaintiff argues that neither of those physicians nor any other medical source reviewed Plaintiff's medical records for the period from July 2019 through June 2023.  *Id.* at 17.  Plaintiff argues that, given the absence of a reliable medical source opinion, the ALJ should have consulted with a medical expert at the administrative hearing, sought interrogatories post-hearing, and obtained an additional medical source opinion regarding whether there was any more that Plaintiff could have done in terms of "follow up" care.  *Id.*

The Commissioner, in response, argues that the ALJ was under no obligation to develop the record further, because the record was "unambiguous" and otherwise adequate to render a decision.  [Dkt. 13 at 13].  The Commissioner also argues that the ALJ's rejection of Dr. Santiago's opinion, which was the sole medical source opinion in the record, "does not render the

23

1    record undeveloped or prevent the ALJ from making a valid [RFC] finding." *Id.* (citing *Farlow v.*

2    *Kijakazi*, 53 F.4th 485 (9th Cir. 2022)).

3         "Social security proceedings are inquisitorial rather than adversarial.  It is the ALJ's duty

4    to investigate the facts and develop the arguments both for and against granting benefits." *Sims v.*

5    *Apfel*, 530 U.S. 103, 110-11 (2000).  An ALJ is obligated "to fully and fairly develop the record

6    and to assure that the claimant's interests are considered." *Tonapetyan*, 242 F.3d at 1150.  "This

7    duty extends to the represented as well as to the unrepresented claimant." *Id.*  However, "[a]n

8    ALJ's duty to develop the record further is triggered only when there is ambiguous evidence or

9    when the record is inadequate to allow for proper evaluation of the evidence." *Ford v. Saul*, 950

10   F.3d 1141, 1156 (9th Cir. 2020) (quoting *Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir.

11   2001)); *see Brown v. Berryhill*, 697 F. App'x 548, 549 (9th Cir. 2017) ("Because the record

12   evidence was not ambiguous and the record was sufficient to allow for proper evaluation of the

13   evidence, the ALJ was not required to re-contact Brown's doctors or further develop the record.").

14        The ALJ may discharge their duty to develop the record in several ways, including by

15   subpoenaing the claimant's physicians, submitting questions to the claimant's physicians,

16   continuing the hearing, or keeping the record open after the hearing to allow supplementation of

17   the record.  *Tonapetyan*, 242 F.3d at 1150.

18        The Court has reviewed the record in this case and concludes that, here, the ALJ

19   substituted her own judgment for that of a medical professional's in determining Plaintiff's RFC.

20   Specifically, the ALJ concluded that Plaintiff's monocular vision deficit did not affect his

21   binocular vision, despite the existence of a contrary finding by Dr. Santiago, and despite (by the

22   ALJ's own admission) a "lack of combined vision findings" in the record.  [AR 34].  Further, the

23   ALJ concluded that Plaintiff's symptoms testimony and Dr. Santiago's opinion regarding

24   Plaintiff's limitations were deficient, in part, because Plaintiff's treatment was "limited to dry

25   eyes," there was "little evidence of related follow up," and Plaintiff testified that he rode a bike

26   prior to his incarceration.  *Id.*  However, the record is devoid of any evidence or medical source

27   opinion regarding more aggressive treatment options.  Further, the ALJ did not question Plaintiff

28   regarding the reasons for his lack of follow up appointments, or regarding the frequency, duration,

*United States District Court*
*Northern District of California*

24

1    or limitations on his bike riding.  *See Flowers v. Kijakazi*, No. 22-cv-05239-TLT, 2023 WL

2    6370916, at *10 (N.D. Cal. July 24, 2023) ("Here, the record indicates that Plaintiff was paying

3    out-of-pocket for his therapy sessions and that his PTSD was triggered by medical settings and

4    doctors, including during his visits to the Department of Veteran Affairs.  Any one of these

5    reasons could explain why Plaintiff did not seek additional medical treatment, and the ALJ should

6    have developed the record regarding such an inquiry before inferring Plaintiff's monthly treatment

7    suggested his symptoms were not as severe as he claimed.") (internal citations omitted).

8           Accordingly, the Court finds that remand is necessary for further development of the

9    record.

10   **IV.    Whether the ALJ Erred by Failing to Include Plaintiff's Mental Limitations**

11          Finally, Plaintiff argues that the ALJ's RFC determination was not supported by

12   substantial evidence, because the ALJ did not include limitations for Plaintiff's "mild deficits in

13   concentration, persistence, and maintaining pace without adequate explanation."  [Dkt. 9 at 17].

14          An RFC must account for all of a claimant's medically determinable impairments (whether

15   severe or non-severe) and must reflect the total limiting effects of all such impairments.  20 C.F.R.

16   §§ 404.1545(e), 416.945(e); *Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017); *see also* SSR

17   96-8p, 1996 WL 374184, at *5 ("In assessing RFC, the adjudicator must consider limitations and

18   restrictions imposed by all of an individual's impairments, even those that are not 'severe.'").  But

19   while the regulations require the ALJ to *consider* the limiting effects of all impairments (both

20   severe and non-severe) in assessing the RFC, they do not require the ALJ to translate every non-

21   severe impairment into a functional limitation in the RFC.  *D.L.P. v. Kijakazi*, No. 21-cv-00792-

22   VKD, 2022 WL 4472064, at *3 (N.D. Cal. Sept. 26, 2024) (citations omitted).  "Provided the ALJ

23   does not rely on boilerplate language, but actually reviews the record and specifies reasons

24   supported by substantial evidence for not including the non-severe impairment, the ALJ has not

25   committed legal error."  *Id.* (citations omitted).

26          Here, the ALJ acknowledged Plaintiff's mild limitations in concentrating, persisting, and

27   maintaining pace in the written analysis.  [AR 30 ("With regard to concentrating, persisting, or

28   maintaining pace, the claimant has a mild limitation.")].  The ALJ did not include these limitations

in the RFC formulation because Plaintiff expressly "denied problems with concentration" at the hearing, and because Plaintiff's treatment records generally reflected no issues with concentration. [AR 33].

Plaintiff argues that because the ALJ found mild limitations in concentration, persistence, and pace at step two but then "provided no limitation in the RFC findings for mild limitations in concentrating, persisting, and maintaining pace," the ALJ's RFC was therefore flawed. [Dkt. 9 at 18]. However, Plaintiff makes no argument as to what limitation the ALJ failed to impose. Nor does Plaintiff identify any evidence that supports a mental work-related limitation beyond that which the ALJ proscribed.

The Court finds no error in the ALJ's determination. *See Alexander v. O'Malley*, No. 23-55213, 2024 WL 612877, at *1 (9th Cir. Feb. 14, 2024) ("Alexander contends that the ALJ erred by failing to include a functional restriction related to her mild mental limitation in his RFC determination. We, however, rejected essentially the same argument in [*Woods*], because the claimant identified no specific 'evidence that the ALJ failed to consider or explain.'").

### CONCLUSION

For the foregoing reasons, **IT IS ORDERED THAT:**

1. The Commissioner's final decision is **REVERSED** and this case is **REMANDED** to the Commissioner for further administrative proceedings consistent with this Order.

2. Plaintiff is awarded costs pursuant to Federal Rule of Civil Procedure 54(d)(1).

   **IT IS SO ORDERED.**

Dated:  September 10, 2025

_____
PETER H. KANG
United States Magistrate Judge

United States District Court
Northern District of California

26